UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JASON WENTWORTH, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:17-cv-594 |
| METRODATA SERVICES, INC., | ) ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND PLAINTIFF'S MOTION TO STRIKE**
**(Docs. 32, 33, 39)**

Plaintiff Jason Wentworth has sued Defendant Metrodata Services, Inc. ("Metrodata") on behalf of himself and a class of similarly situated individuals, alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* Plaintiff filed his first motion for class certification on May 24, 2019. (Doc. 31.) The court denied that motion without prejudice on July 29, 2019, giving Plaintiff leave to file a renewed motion for certification after the parties completed more discovery. (Doc. 46.) Between the filing of Plaintiff's first motion for class certification and the court's July 2019 order, both parties filed motions for summary judgment (Docs. 32, 33), and Plaintiff filed a motion to strike certain affidavits submitted in support of Defendant's motion (Doc. 39). The parties agreed that the court should defer deciding on the motions for summary judgment until after it ruled on the renewed motion for class certification. (*See* Doc. 55 at 6.)

Plaintiff filed a renewed motion for class certification on March 11, 2020. (Doc. 56.) On November 9, 2020, the court granted class certification for a claim under 15 U.S.C. § 1681c and denied class certification for a claim under 15 U.S.C. § 1681k. (Doc. 64.) Having decided the

class certification issue, the court now considers the parties' motions for summary judgment and Plaintiff's motion to strike certain affidavits. In addition to the class claims, the Complaint includes individual claims under 15 U.S.C. § 1681e and 15 U.S.C. § 1681i. (*See* Doc. 1.)[1]

## Background

### I.    Facts

The following facts are undisputed unless noted otherwise.

In June 2015, Plaintiff interviewed for a job as a Guest Services Manager employed by Emerald Hospitality ("Emerald") at a hotel in Portland, Maine. The Craigslist posting for the position indicated that "a clean driver's license [was] required." (Doc. 32-18 ¶ 9; Doc. 38-1 ¶ 9.) Emerald offered Plaintiff the position on June 29, 2015 at a starting salary of $37,500 plus benefits. (Doc. 33-3 ¶ 3; Doc. 40-5 ¶ 3.) The offer was contingent on Plaintiff passing a background check performed by Defendant Metrodata. Metrodata is a "consumer reporting agency" ("CRA") that prepares "consumer reports" within the meaning of 15 U.S.C. § 1681a. (Doc. 33-3 ¶ 1; Doc. 40-5 ¶ 1.)

Metrodata provided Plaintiff's consumer report to Emerald between July 7 and July 9, 2015. (Doc. 32-18 ¶ 12; Doc. 38-1 ¶ 12.) Emerald revoked Plaintiff's job offer on July 9, 2015. Plaintiff's report falsely indicated that Plaintiff had been "adjudicated guilty" of two felonies: driving without a valid license and use or possession of drug paraphernalia. (Doc. 33-3 ¶ 5; Doc. 40-5 ¶ 5.) The report also included a non-conviction count of felony possession of cocaine, which preceded the date of the report by more than seven years and was not prosecuted. (Doc. 33-3 ¶ 6; Doc. 40-5 ¶ 6.) In reality, Plaintiff has only two misdemeanor convictions for

---

[1] Originally, Plaintiff sought class certification for a claim under 15 U.S.C. § 1681i. (Doc. 1 ¶¶ 45–55.) Plaintiff abandoned this request in his Renewed Motion to Certify Class. (Doc. 56 at 5.)

driving without a valid license and use or possession of drug paraphernalia. (Doc. 33-3 ¶ 7; Doc. 40-5 ¶ 7.) The parties disagree about whether this information was available at the time Defendant produced Plaintiff's report. (*Compare* Doc. 33-3 ¶ 7, *with* Doc. 40-5 ¶ 7.)

The consumer report produced by Metrodata accurately reported Plaintiff's driving record. The record indicates a "conviction" for the 6-point violation of "speeding 88 mph in a 65 mph zone" and for "failure to produce evidence of insurance." (Doc. 32-5 at 4.) There are two dates listed next to these violations: March 17, 2014 and July 7, 2014, with the latter identified as the "entry date." (*Id.*) There are five other entries in the record, which document the suspension of Plaintiff's license due to his failure to provide evidence of insurance. (*See id.* at 3–5.) Defendant describes this record as containing "a myriad of driving violations and . . . driving privileges [] suspended on multiple occasions." (Doc. 32-18.) Plaintiff counters that he had "*one* speeding violation over 15 months before he applied to emerald" and "had also allowed his insurance to lapse resulting in suspension," a condition he corrected before applying to Emerald. (Doc. 38-1 ¶ 7.)

## A.    Emerald's Revocation of the Job Offer

Emerald revoked Plaintiff's offer of employment based on information in the consumer report provided by Defendant. The parties disagree about which aspect of the consumer report caused Emerald to revoke the offer.

Defendant offers three affidavits of Emerald employees that suggest Emerald revoked Plaintiff's offer of employment due to his driving record. (*See* Docs. 32-15 to -17.) One of these employees, Jennifer DeLuca, also provided deposition testimony on January 8, 2019 regarding Emerald's rationale for revoking the offer of employment. In response to a question about whether "criminal records that [] reported . . . possession of cocaine, felony; no valid driver's

3

license, felony; use o[r] possession [of] drug paraphernalia, felony . . . would [] be disqualifying" (Doc. 32-13 at 4), DeLuca responded:

> No. . . Because once again, it depends. The date was in '07, so that was eight years prior. And so we have hired people that have drug charges in the past if it's not within a couple years. So that definitely is not great, we don't like to see that, but if it's not recent, we would still consider hiring the candidate.

(*Id.* at 5.) Instead, DeLuca testified that the "disqualifying" information on Plaintiff's consumer report was "The driving. . . . Driving where he had the 88 in the 65, and there w[ere] a few suspensions due to not producing evidence of insurance." (*Id.*)

Plaintiff, in contrast, points to email correspondence between Emerald employees that suggests Emerald revoked his offer of employment based on the inaccurate criminal record information reported by Metrodata. On July 9, 2015, Plaintiff wrote to Stacy O'Reilly, a General Manager at Emerald: "Stacy, I just received your voicemail and have to say that I am shocked and confused. The only contact I have had with law enforcement in the last decade has been a speeding ticket. I will wait for the paperwork in the mail to see the reasoning behind their decision." (Doc. 33-14 at 2.) Eleven minutes after receiving Plaintiff's email, O'Reilly forwarded it to Jennifer DeLuca, Emerald's Corporate Director of Human Resources, with the message: "Didn't you say there were felony items on here??" (*Id.* at 1.) That evening, DeLuca replied: "Interesting. Yes, Angela said there was a cocaine charge and another drug charge. Both felonies. Maybe it's a mix up? That has happened once before." (*Id.*)

### B.    Metrodata's Procedures for Producing Consumer Reports

Plaintiff's claims challenge the procedures Defendant maintains and follows when it produces consumer reports. The record evidence includes the following facts about these procedures.

Metrodata compiles consumer reports using Image-I-Nation Technologies, Inc.'s Flexible Research System technology. (Doc. 33-3 ¶ 9; Doc. 40-5 ¶ 9.) Some of the reports Metrodata processes include a criminal record search using the "Insta-Crim" tool. (Doc. 33-3 ¶ 9; Doc. 40-5 ¶ 9.) When the Insta-Crim tool identifies a positive criminal record, it "freezes" the record, which then must be "defrosted" by a Metrodata employee. (Doc. 33-3 ¶ 11; Doc. 40-5 ¶ 11.) Image-I-Nation does not audit or maintain the accuracy of Insta-Crim search results. (Doc. 33-3 ¶ 13; Doc. 40-5 ¶ 13.)

Defendant has submitted an affidavit from the president and owner of Metrodata (the "Patrick Affidavit") that attests to the procedure Defendant follows when using criminal record databases to compile consumer reports:

> 10. When Insta-Crim or Rapid Court Comprehensive register a criminal record "hit" on a particular person or subject of a Metrodata inquiry, it is not the end of the inquiry. To the contrary, it marks the beginning of an extensive vetting process.
>
> 11. Each Criminal record "hit" is verified and researched at the county or other jurisdictional level by a local third-party researcher hired by Metrodata.
>
> 12. If the criminal record can be verified, then it is included and reported in the consumer report.
>
> 13. If the criminal record cannot be verified, then it is not included and not reported in the consumer report.

(Doc. 34-4.) The Patrick Affidavit comprehensively illustrates this process using the audit trails for two sample criminal records. (*Id.* at 3–20.)

The procedures outlined in the Patrick Affidavit are consistent with Metrodata's policy on "Database Criminal Records":

> Metrodata Services, Inc. does not report adverse criminal record information that is derived from a non-government owned or sponsored/supported database until and unless the information has been verified with the jurisdiction or venue that maintains the official record for that jurisdiction.

5

> In effect, we use the private database as pointer file. If the database returns adverse
> information, we order a criminal record from the jurisdiction/venue that maintains
> the official record. When this contemporaneous criminal record is received, that
> information is reported to the client.

(Doc. 33-13.)

Defendant did not adhere to these procedures when it produced Plaintiff's consumer report. In its Response to Plaintiff's Fed. R. Civ. P. 56 Statement of Undisputed Facts, Defendant acknowledges that "Plaintiff's consumer report was, in fact, a deviation from Metrodata's standard practice." (Doc. 40-5 ¶ 16.) The record further establishes that, despite Metrodata's policy of "conduct[ing] independent searches and thoroughly vet[ting] all data incorporated into consumer reports" (Doc. 40-5 ¶ 15) and "compl[ying] with all applicable requirements of the Fair Credit Reporting Act" (*id.* ¶ 18), "Metrodata erred when it generated [Plaintiff's] credit report" (*id.*). Defendant states, "While true that the named Plaintiff's consumer report was, for reasons unknown, not vetted or verified, the named Plaintiff's consumer report was an anomaly." (Doc. 34-4 ¶ 4.)

**C.    Plaintiff's Damages**

In response to Defendant's interrogatories, Plaintiff stated that he "applied to many other employment opportunities predominantly through Craigslist.com" after Emerald revoked his employment offer. (Doc. 32-10 ¶ 22.) He "eventually secured employment at Applebee's and Longhorn's Steakhouse as a server." (*Id.*)

During his deposition, Plaintiff testified to the humiliation and embarrassment he felt after Emerald revoked his job offer. (*See* Doc. 38-1 ¶ 5 (citing Doc. 42-3 at 26–29).) He explained why he felt humiliated:

> I was telling the people who I loved and were close to me that I had gotten this job,
> and was finally getting back into the hotel industry. It was a perfect turning point
> for me actually. And then as a result I was denied the job after accepting it. I had to
> tell everyone the details of what had happened. It was very embarrassing for me. . . .

6

It's humiliating. Not only did they have to find out there was an issue with the courts in Polk County when I was young. I was ready to get back into the hotel industry and get back on the path that I was supposed to be on. And this incident and not getting the job caused a lot of embarrassment and humili[ation] for me . . . .

(Doc. 42-3 at 26–29.) Plaintiff identified his parents, siblings, and then-girlfriend as some of the people with whom he shared the details of his job offer and the subsequent revocation of the offer. (*Id.*)

Plaintiff testified to seeking medical treatment as a result of the emotional and mental stress he experienced. (Doc. 42–3 at 29.) Plaintiff began seeing a primary care physician sometime between 2016 and the summer of 2017, who prescribed him medication for anxiety and stress at the end of 2017 or beginning of 2018. (Doc. 32-11 at 3–6.) Plaintiff identified a breakup with a girl as "part of the reason" he sought treatment from his physician. (*Id.* at 6.)

## II.    Relevant Statutory Provisions

The following statutory provisions are relevant to the motions for summary judgment.

- **15 U.S.C. § 1681c (Class Claim)**

Section 1681c prohibits a CRA from preparing a consumer report containing "[a]ny [] adverse item of information, other than records of convictions of crimes which antedates the report by more than seven years." 15 U.S.C. § 1681(a)(5).

- **15 U.S.C. 1681e (Individual Claim)**

Section 1681e provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

- **15 U.S.C. § 1681k (Individual Claim)[2]**

---

[2] The court denied class certification on this claim. Generally, where class certification of a claim is denied, the plaintiff may proceed as an individual. *See Payton v. Cnty. of Kane,*

7

Section 1681k requires a CRA that "furnishes a consumer report for employment purposes," based on "matters of public record" that "are likely to have an adverse effect upon a consumer's ability to obtain employment," to either notify the consumer or

> maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date. For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported.

15 U.S.C. § 1681k(a)(1)–(2).

- **Damages Under the FCRA**

A plaintiff may recover actual damages for negligent violations of FCRA. 15 U.S.C. § 1681*o*. A plaintiff may also recover actual or statutory damages and punitive damages for "willful" violations of the statute. *Id.* § 1681n. For both negligent and willful violations, a successful plaintiff may also recover costs and reasonable attorney's fees. *Id.* §§ 1681n, 1681*o*.

## <u>Analysis</u>

### I.   Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, "the district court is required to resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 45 (2d Cir. 2019) (quoting *Kessler v.*

---

308 F.3d 673, 677 (7th Cir. 2002) ("[T]he proper remedy for [nonsuitability of a class action under Fed. R. Civ. P. 23] is not dismissal of the entire action, but rather an order denying class certification and permitting the case to continue as an individual suit."); *Lumbermens Mut. Cas. Co. v. Rhodes*, 403 F.2d 2, 5–6 (10th Cir. 1968) ("It appears to be the law, however, that even though a class action does not meet the requirements of Rule 23, it is not subject to dismissal if it also states a claim for relief against the defendant or defendants named individually.").

*Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006)). Where "there are genuine issues of material fact that . . . may reasonably be resolved in favor of either party" or "admissible materials in the record make it arguable that the claim has merit," summary judgment must be denied. *Davis-Garett*, 921 F.3d at 45. When considering cross-motions for summary judgment, "The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Fed. Prac. & Proc. Civ.* § 2720 (4th ed.).

## II.     Standing

At the outset, Defendant argues that Plaintiff lacks standing to bring any of his FCRA claims. (Doc. 32-19 at 10–12.) Standing is a threshold jurisdictional requirement that a named class plaintiff must satisfy with respect to both individual and class claims. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 n.4 (2016) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured . . . ." (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40, n.20 (1976))). To establish standing, a plaintiff must demonstrate that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* at 1547. The injury-in-fact must be "concrete and particularized" and "actual or imminent." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

The court previously addressed standing in the context of Plaintiff's motion to certify a class under 15 U.S.C. § 1681c. (*See* Doc. 64 at 9.) There, the court considered and rejected Defendant's argument that a procedural violation of the FCRA was not a sufficiently "concrete"

injury-in-fact. Here, Defendant objects that Plaintiff lacks standing because "there is no causal relationship between any harm alleged by Plaintiff and the alleged FCRA violations." (Doc. 32-19 at 10.) The court considers whether Defendant has met its burden under Rule 56.

Plaintiff alleges that Emerald revoked his offer of employment based on information that Metrodata included in his consumer credit report in violation of §§ 1681c, 1681e, and 1681k. Neither party disputes that the revocation of an employment offer is a concrete harm. Instead, Defendant argues there is no causal relationship between its FCRA violations and Plaintiff's concrete injury because Emerald based its revocation on Plaintiff's (accurately reported) driving record rather than on Plaintiff's (inaccurately reported) criminal record. (Doc. 32-19 at 10–12.) Defendant supports this argument with Jennifer DeLuca's deposition testimony (Doc. 32-13) and three affidavits by Emerald employees,[3] including DeLuca, that suggest Plaintiff's previous speeding ticket and license suspension were the reasons for the revocation. (*See* Docs. 32-15 to -17.) Plaintiff, in turn, has put forward email records that, construed most favorably to Plaintiff, support an inference that Emerald based its revocation on Plaintiff's inaccurately reported criminal record, rather than any driving violations. (*See* Doc. 33-14.)

The court does not weigh evidence at the summary judgment stage. Here, DeLuca's deposition testimony and the email correspondence identified by Plaintiff create a genuine dispute of material fact about which information in Plaintiff's consumer report caused Emerald to revoke its offer. This dispute must be resolved by the factfinder, and consequently summary judgment cannot be granted to Defendant on the question of Plaintiff's standing.

The court reaches this conclusion without relying on the contested affidavits; the information supplied in Jennifer DeLuca's deposition testimony constitutes sufficient record

---

[3] These affidavits are the focus of Plaintiff's motion to strike (Doc. 39).

evidence supporting Defendant's side of the dispute. Consequently, the court has no need to consider Plaintiff's motion to strike Defendant's affidavits (Doc. 39).

## III.    Claims About Metrodata's Procedures (§§ 1681e and 1681k)

Plaintiff seeks summary judgment on his individual claims under §§ 1681e and 1681k. Each of these provisions relates to a CRA's procedures for preparing consumer reports. An agency violates § 1681e when it does not "follow *reasonable* procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b) (emphasis added). In contrast, an agency violates § 1681k when—in the course of furnishing a consumer report for employment purposes—it fails to "maintain *strict* procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date." 15 U.S.C § 1681k(a)(1)–(2) (emphasis added).

The parties do not dispute that Plaintiff's consumer report was created for an employment purpose and contained inaccurate data. (Doc. 33-3 ¶ 4; Doc. 40-5 ¶ 4.) The only question for both claims is whether Defendant's maintenance of or adherence to reporting procedures complied with the relevant statutory standards. *See Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001) ("[A] consumer reporting agency violates § 1681e(b) if (1) the consumer report contains inaccurate information and (2) the reporting agency did not follow reasonable procedures to assure maximum possible accuracy."); *Farmer v. Phillips Agency, Inc.*, 285 F.R.D. 688, 700 (N.D. Ga. 2012) ("[T]o establish a violation of the requirements of § 1681k(a)(2), a plaintiff must show that: (1) a CRA furnished a consumer report for employment purposes compiled from public records containing adverse information; (2) the CRA failed to

11

maintain strict procedures designed to insure that the information in that report was complete and up to date; and (3) the consumer report was either incomplete or not up to date.").

The "reasonable procedures" standard of § 1681e is lower than the "strict procedures" standard of § 1681k. *Jones v. Sterling Infosystems, Inc.*, 317 F.R.D. 404, 409 n.4 (S.D.N.Y. 2016); *Obabueki v. Int'l Bus. Machines Corp.*, 145 F. Supp. 2d 371, 399 (S.D.N.Y. 2001) (citing *Equifax Inc. v. Fed. Trade Comm'n*, 678 F.2d 1047, 1049 n.4 (11th Cir. 1982)), *aff'd*, 319 F.3d 87 (2d Cir. 2003); *see also Dalton*, 257 F.3d at 417. Plaintiff argues that Defendant's procedures are unreasonable as a matter of law, and that the absence of reasonable procedures entitles him to summary judgment on both claims.

### A.    Whether Metrodata Followed Reasonable Procedures

A CRA violates § 1681e when it fails to "*follow* reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C § 1681e (emphasis added). Because the FCRA is not a strict liability statute, "an agency can escape liability [under § 1681e] if it establishes that an inaccurate report was generated despite the agency's following reasonable procedures." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995). Reasonableness is typically a question for the jury because "[j]udging the reasonableness of a credit reporting agency's procedures involves weighing the potential harm from inaccuracy against the burden of safeguarding against such inaccuracy" *Cortez*, 617 F.3d at 709.; *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004) (holding that reasonableness is "normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question."); *Guimond*, 45 F.3d at 1333. However, even if a CRA maintains reasonable procedures, the CRA's failure to follow those procedures in an individual case, violates the obligation imposed by § 1681e.

The undisputed record evidence demonstrates that Defendant did not adhere to its policies—reasonable or unreasonable—when it generated Plaintiff's consumer report. Because the record evidence is undisputed that Defendant failed to follow its standard procedure in the course of preparing Plaintiff's report, resulting in the inclusion of inaccurate information in Plaintiff's consumer report, Plaintiff is entitled to summary judgment on the question of whether Defendant breached its statutory duty under § 1681e.

However, the FCRA does not impose liability for mere violations of the statute. 15 U.S.C. §§ 1681n–1681o. To recover actual damages, Plaintiff must establish that Defendant's violation was negligent; to recover punitive damages, Plaintiff must establish that Defendant's conduct was willful. In either case, Plaintiff must demonstrate that Defendant's violation of § 1681e *caused* his harm. As discussed earlier, there exists a genuine question of fact about whether Plaintiff's injury—Emerald's revocation of Plaintiff's employment offer—was based on Defendant's inaccurate reporting of Plaintiff's criminal record or on Defendant's accurate reporting of Plaintiff's driving record. Consequently, the court does not grant summary judgment on the questions of breach, causation, and damages.

**B.    Whether Metrodata Maintains "Strict Procedures"**

Whereas liability under § 1681e depends on whether a CRA adhered to reasonable procedures in the preparation of a particular individual's consumer report, liability under § 1681k turns on whether the CRA "*maintain[s]* strict procedures *designed to insure*" the accuracy of consumer reports produced for employment purposes and containing information likely to be adverse to that purpose. 15 U.S.C. § 1681k(1)–(2). Consequently, the fact that Defendant violated § 1681e by failing to follow reasonable procedures in Plaintiff's individual case does not

mean that Defendant is also liable under § 1681k for failing to maintain strict reporting procedures.

Courts have held that a CRA's policy of "communicat[ing] directly with the relevant court, even over the telephone," to audit a consumer's criminal record information is sufficient "to entitle a consumer reporting agency to summary judgment on the issue of whether it maintained sufficiently strict procedures" within the meaning of § 1681k. *Oses v. Corelogic Saferent, LLC*, 171 F. Supp. 3d 775, 780 (N.D. Ill. 2016); *see also Philpot v. Microbilt Corp.*, No. 3:16-CV-382-TBR-LLK, 2018 WL 834619, at *6 (W.D. Ky. Feb. 12, 2018); *Moore v. First Advantage Enter. Screening Corp.*, No. 4:12 CV00792, 2013 WL 1662959, at *6–7 (N.D. Ohio Apr. 17, 2013). The record is undisputed that Metrodata did not take such an action in this case. (Doc. 33-3 ¶ 10; Doc. 40-5 ¶ 10.) However, this fact establishes only an individual deviation from procedure and does not establish that Defendant, as a policy, failed to maintain strict procedures.

The undisputed evidence establishes that Image-I-Nation does not audit or maintain the Insta-Crim system that Defendant uses to produce some consumer reports. (Doc. 33-3 ¶ 13; Doc. 40-5 ¶ 13.) But even though no reasonable factfinder could conclude that "blindly" relying on Insta-Crim's unaudited criminal record information satisfies § 1681k's "strict procedures" requirement, there exists a genuine factual dispute about how Defendant audits and uses data from Insta-Crim and other criminal record sources. (*Compare* Doc. 33-3 ¶¶ 12, 14 (alleging "blind" reliance on Insta-Crim), *with* Doc. 34-4 ¶¶ 10–17 (describing Metrodata's procedures).) Although Plaintiff contends that "Metrodata has not produced any evidence that it ever followed such a policy in compiling its consumer reports" (Doc. 33-3 ¶ 16), Plaintiff, as the party moving

for summary judgment, bears the burden of demonstrating that Metrodata does *not* maintain strict procedures.

Plaintiff urges the court to conclude, as a matter of law, that Metrodata does not maintain strict procedures because it reported inaccurate and outdated felony information in Wentworth's consumer report. (*See* Doc. 33-1 at 7.) However, Defendant has presented evidence that it maintains a policy on criminal record searches, under which Defendant and its agents verify and research criminal record "hits" identified by criminal record information databases. Courts have held this type of policy to be sufficiently "strict" within the meaning of § 1681k, *e.g.*, *Oses*, 171 F. Supp. 3d at 780; *Moore*, 2013 WL 1662959, at *6, and Plaintiff's evidence does not establish that Defendant routinely flouts its written criminal record policy so as to make deviations from established procedures Defendant's de facto policy. Because "there are questions as to whether, based on the procedures used to investigate plaintiff's criminal record in this case, [the CRA] intentionally maintained substandard procedures, or knew or should have known that its procedures would not meet the standard," *Obabueki*, 145 F. Supp. 2d at 398, the court denies Plaintiff's motion for summary judgment on his individual § 1681k claim.

## IV.   Section 1681c Claim

Plaintiff seeks summary judgment on the class claim under § 1681c. Plaintiff points out that "Metrodata concedes that it violated Section 1681c by reporting nonconviction information that was older than seven years in Wentworth's consumer report" (Doc. 33-1 at 8), and argues that this occurred because "Metrodata has no mechanism or procedure for complying with the requirements of Section 1681c(a)" (*id.* at 9). On this basis, Plaintiff argues that the class is entitled to summary judgment on its § 1681c claim.

As Defendant points out, "merely establishing an inaccuracy in [Plaintiff's] report" does not entitle Plaintiff to summary judgment on the class claims under § 1681c. The undisputed record evidence establishes only that the production of *Plaintiff's* report was a single instance of violation of § 1681c, and establishes neither that Metrodata routinely produced reports in violation of § 1681c nor that information in any other class member's consumer report violated § 1681c. Consequently, Plaintiff's motion for summary judgment is denied with respect to the class claim under § 1681c.

## V.      Damages

The FCRA allows a plaintiff to recover actual damages for negligent violations of the statute, 15 U.S.C. § 1681*o*, and actual or statutory damages and punitive damages for "willful" violations, *id.* § 1681n. "Actual damages" under the FCRA includes lost wages and "may include humiliation and mental distress, even in the absence of out-of-pocket expenses." *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 474 (2d Cir. 1995).

Defendant seeks summary judgment on Plaintiff's claim under § 1681e on the basis that Plaintiff cannot produce evidence of his emotional damages (Doc. 32-19 at 13–14) or lost wages (*id.* at 14–15). Defendant also seeks summary judgment on Plaintiff's claim for punitive damages, arguing that Plaintiff has produced no evidence from which a factfinder could conclude that Defendant willfully violated the FCRA. (*Id.* at 16–17.)

### A.      Proof of Actual Damages

Defendant's assertion that Plaintiff cannot provide evidence of lost wages derives from its argument about the cause of Plaintiff's harm. In particular, Defendant argues that because "Emerald Hospitality rescinded Plaintiff's offer of employment because of Plaintiff's driving record, which was accurately reported on Plaintiff's consumer report, . . . there can be no causal

connection between Plaintiff's alleged lost wages and any alleged FCRA violation." (Doc. 32-19 at 15.) However, the court has previously determined that the proximate cause of the revocation of Plaintiff's employment offer is a disputed material fact. Consequently, Defendant cannot establish as a matter of law that there is no causal connection between Plaintiff's lost wages and a FCRA violation by Defendant, and Defendant is not entitled to summary judgment on Plaintiff's lost wages claim on this basis. *See Philpot*, 2018 WL 834619, at *3 ("[T]he disagreement over whether Microbilt's consumer report caused Philpot to suffer lost wages is sufficient to require submission to a jury.").

Defendant also objects that Plaintiff has not produced evidence "that he ever sought employment in the hotel industry after the incident alleged in the Complaint." (*Id.*) However, Plaintiff has put forward evidence that he was not immediately able to find employment after Emerald revoked its offer, and that he eventually secured employment working in a restaurant rather than a hotel. (Doc. 32-10 ¶ 22.) A reasonable factfinder could conclude from this evidence that Emerald's revocation of its offer to Plaintiff caused him to experience a delay in employment or to accept a lower-paying job. Consequently, Defendant is not entitled to summary judgment on Plaintiff's claim for lost wages.

Defendant likewise is not entitled to summary judgment on Plaintiff's claim for emotional damages. Defendant contends that Plaintiff's claim for emotional damages is "utterly unsubstantiated and cannot be connected to the alleged FCRA violations." (Doc. 32-19 at 14.) Defendant argues that Plaintiff has failed to put forth "objective evidence, such as expert testimony or medical records, to support his claim." (*Id.* at 13.) However, in contrast with some of the cases cited by Defendant, Plaintiff has put forward record evidence suggesting that Defendant's FCRA violation caused the revocation, *cf. Casella*, 56 F.3d at 474–75 ("[A]ppellant

was not entitled to pain and suffering damages in this case, because he had failed to show that his emotional distress was caused by [CRAs].”), and testified to the personal extent of his harm.

Courts have recognized that a plaintiff's testimony “can provide sufficient evidence to support an emotional distress award” where the testimony “sufficiently articulates true demonstrable emotional distress.” *Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 503 (4th Cir. 2007) (internal citations and quotation marks omitted); *compare* S*mith v. LexisNexis Screening Sols., Inc.*, 837 F.3d 604, 611 (6th Cir. 2016) (holding that a plaintiff's extensive testimony describing his “shame, anger, and stress that stemmed from financial hardships” could enable “reasonable jurors” to “identify and infer that a reasonable person in the same situation would suffer emotional distress”), *with Ruffin-Thompkins v. Experian Info. Sols., Inc.*, 422 F.3d 603, 610 (7th Cir. 2005) (rejecting an emotional damages claim where the plaintiff “describe[d] the emotional distress felt by plaintiffs in other FCRA cases” but “d[id] not explain her injury in any reasonable detail”).

Courts have viewed plaintiffs' testimony regarding their emotional distress as more compelling when accompanied by evidence that the plaintiff sought medical or psychological treatment. *E.g.*, *Okocha v. HSBC Bank USA, N.A.*, No. 08 CIV 8650(MHP), 2010 WL 5122614, at *6 (S.D.N.Y. Dec. 14, 2010) (“[A FCRA] plaintiff must present concrete evidence of such [emotional] distress (e.g., medical reports), and his own conclusory allegations are insufficient.”); *Philpot*, 2018 WL 834619, at *4; *Moore v. First Advantage Enter. Screening Corp.*, No. 4:12 CV00792, 2013 WL 1662959, at *5 (N.D. Ohio Apr. 17, 2013) (“[Plaintiff] has not sought any medical treatment or counseling for his purported emotional distress. . . . In short, Plaintiff has provided . . . no facts to substantiate his general, vague allegations of emotional distress.”); *Bagby v. Experian Info. Sols., Inc.*, 162 F. App'x 600, 605 (7th Cir. 2006) (“Bagby

18

did not seek any medical or psychological treatment for the emotional distress she claims resulted from Experian's actions.").

Plaintiff testified to both his feelings of humiliation and embarrassment after Emerald revoked the job offer as well as the long-term consequences of that distress, including his decision to seek mental health treatment. (Doc. 42-3 at 26–29.) Contrary to Defendant's suggestion, Plaintiff's deposition testimony does not compel the conclusion that Plaintiff's medical treatment was solely "linked [] to a romantic break-up, and not in any way to Emerald Hospitality's decision not to hire Plaintiff." (Doc. 32-19.) Instead, the most favorable reading of Plaintiff's testimony is that *both* the breakup and the revocation of his job offer contributed to Plaintiff's decision to seek treatment for his stress and anxiety.

When viewed in the light most favorable to the nonmoving party, Plaintiff's testimony is sufficiently nonconclusory and concrete to create a genuine dispute of material fact regarding the emotional distress he suffered after Emerald revoked his job offer. Consequently, Defendant is not entitled to summary judgment on Plaintiff's claim for emotional damages.

### B.   Availability of Punitive Damages

The Supreme Court has held that the "willfulness" standard in § 1681n encompasses both knowing and reckless violations of the FCRA. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007). The Court further explained that "a company subject to FCRA does not act in reckless disregard . . . unless the [challenged] action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69. "Punitive damages are a question for the jury, subject to the court's duty to review excessive verdicts." *Northrop v. Hoffman of Simsbury, Inc.*, 12 F. App'x 44, 50 (2d Cir. 2001).

Defendant argues that Plaintiff's claim for punitive damages must be dismissed because Plaintiff has not produced evidence to substantiate his claim that Metrodata's conduct was "willful, w[a]nton[,] and reckless." (Doc. 32-19 at 17.) However, Plaintiff has introduced evidence that could permit a factfinder to conclude that Defendant's actions "rais[ed] the 'unjustifiably high risk' of violating the statute necessary for reckless liability." *Safeco*, 551 U.S. at 69. Defendant has acknowledged that, for an unknown reason, the preparation of Plaintiff's consumer report did not comply with Metrodata's standard procedures. (Doc. 40-5 ¶¶ 15–16, 18.) The audit trail of Plaintiff's consumer report indicates that a Metrodata employee approved the Insta-Crim search results for inclusion in Plaintiff's report in less than one minute. (Doc. 31-6 at 3.) Despite the severity of reporting two felony convictions in a consumer report prepared for employment purposes, Defendant did contact the Polk County Clerk of Courts to verify the two felony convictions reported by Insta-Crim. (Doc. 33-3 ¶ 10; Doc. 40-5 ¶ 10.)

A reasonable factfinder could conclude that Defendant's nonadherence to any procedures—reasonable or strict—in the course of preparing a consumer report that included criminal record information was so "objectively unreasonable" and reckless as to render its violations of the FCRA "willful" within the meaning of § 1681n. Consequently, the court denies Defendant's motion for summary judgment on Plaintiff's claim for punitive damages.

### **Conclusion**

Defendant's Motion for Summary (Doc. 32) is DENIED. Plaintiff's Motion for Summary

Judgment (Doc. 33) is GRANTED on the question of whether Defendant violated 15 U.S.C.

§ 1681e but is otherwise DENIED. Plaintiff's Motion to Strike Certain Affidavits (Doc. 39) is

DENIED AS MOOT.

Dated this 11ᵗʰ day of February, 2021.

Geoffrey W. Crawford, Judge
United States District Court